All right, the next case we'll hear is Muhammad v. Norfolk Southern Railway, and Mr. Ghaliland, we'll hear from you. Thank you. May it please the court, I am Joshua Ghaliland, appearing on behalf of Mr. Muhammad, who has appealed from the district court's dismissal of his FBLA action against Norfolk Southern. I think the district court plainly erred in taking this court's 1982 decision in Limmel to be binding authority to the effect that the Longshore Act's situs of injury requirement is satisfied by any injury on a bridge over navigable waters, or to be a little narrower, a bridge over navigable waters that has some design feature that is intended to allow maritime traffic not to be disturbed by the bridge. I thought that we didn't decide the situs issue in that case. I think that's precisely true. I thought the council agreed to it, and the court only addressed the status. Precisely so. Norfolk Southern has argued the contrary based on the notion that satisfaction of the situs requirement is jurisdictional, and that the Limmel court would have had a duty to consider its sua sponte, notwithstanding the party's agreement that there was situs. And you're saying it's an element of your claim. It is an element of the Longshore claim, or it is an element of, in this context, where Longshore exclusivity is raised as a defense against a cause of action against the employer, it is an element of that affirmative defense. Since it wasn't raised in Limmel, it was actually a Longshore Act claim, so it was an element of the claimant's case to show that there was situs coverage as well as maritime employment. Does the Zapatas case build on Limmel? How do you distinguish Zapatas for us? Well I distinguish it from the present case, in fact from any bridge case, by the fact that the extension of land doctrine, which does apply to a bridge the same way it applies to a pier or an offshore oil platform, had no applicability to the fish spotter pilot cases. In this case, this court and the Fifth Circuit both reached the same conclusion. You're over navigable waters with nothing between you and the water, okay, that somehow counts as upon navigable waters. Likewise, there are diver cases where someone is underneath the water or in the water. That too, upon navigable waters has been read broadly as the remedial nature of the Longshore Act would make appropriate. Before 1972, before the 1972 amendments, I gather your position is it was pretty clear that this would not be a situs issue because you had to be on the water or under the water. You had to be using navigable water directly as part of your operation. Yes, and the Perrini-North River decision from the Supreme Court... Perrini and Nacerima and all those point out that even the bridge cases were involving a situation where the seaman was on a barge working on a bridge. Correct. And so the bridge situs would have to be dependent on the 72 amendment. The district court did not regard it so, but yes, I certainly agree with that. And the 72 amendment extended the water to seamlessly, to contiguous appendages that are used in loading and unloading. Any adjoining area customarily used by an employer in loading or unloading vessel. Yes. And in fact, you know... That's your case. That is my case. And I don't really need to hear myself talk, so I can leave it there to the extent the court doesn't have questions. I do want to correct one thing in our brief. With respect to the customarily used by an employer in loading and unloading, the district court, I suppose, considered this bridge to be essential to the loading and unloading operations conducted by other employers upriver from this bridge. We said we didn't know of a case, couldn't think of a case that involved coverage based on a different employer's loading and unloading operations. There is certainly such a case, and I don't know why I didn't think of it in briefing, because I did have it before the Fifth Circuit several decades ago. It's Hullinghorst Industries against Carroll in 650 F2, where the injured worker was an employee of a subcontractor responsible only for erecting scaffolding at the end of a pier where there was some shiploading equipment that was under repair. His employer didn't use that location for any loading and unloading, but the owner of the facility and the pier, a chemical company, used it for loading and unloading chemicals there from vessels. Even though Mr. Carroll's employer did not, he was in a site that was customarily used by an employer for loading and unloading. So yes, even though his employer didn't do any loading and unloading, he was at a site that an employer used for loading and unloading. So we wouldn't say that the fact that Norfolk Southern didn't use this bridge for loading and unloading is critical if other employers did. But they did. They had other facilities, discrete facilities that had nothing to do with this bridge, except that the bridge had to operate to let the vessels get to and from their facilities. Did the record show, as I understood it, that the bridge was always up? Except when a train was coming, yes. Except when a train was coming. Okay, I wanted to make sure I was clear. And during this maintenance project, this railroad tie, cross-tie replacement project, they kept it down whenever there weren't any vessels around because that was much more maintenance operations. But ordinarily, yes, it stayed in the up position, except when the bridge operator was notified, okay, there's a train coming through. Then he would lower it for the train. There was discussion about the delay in Norfolk Southern asserting this and not filing certain procedures. I understand that issue from a, I guess, credibility standpoint. Is there any legal effect to that that you're asserting? No. The only legal... You're just saying it suggests there's a strategy, but you're not saying that bars the claim. It does not bar the claim. In fact, any more than it bars the Longshore claim. If the FBLA action is ultimately unsuccessful on the ground that it was covered by the Longshore Act, yes, there's some additional liability they incurred as a result of not handling it as a Longshore claim from the beginning. But that's the only thing. With the court's permission, I'll reserve any further time for... All right. Thank you, Mr. Ghalelan. Is it Ghalelan or Ghalelan? It's Ghalelan. Ghalelan. All right. Thank you. All right. Mr. Bowen. Good morning. It pleases the court. I am David Bowen. I represent Norfolk Southern on this appeal. And the whole gist of the plaintiff's appeal is that Mr. Muhammad was injured on a bridge that is just a permanently affixed structure that joins dry land to dry land. And there are lots of bridge cases that say people working on bridges in that manner are not covered on a maritime status or status. Every bridge case I saw where Longshore Act applied, the employee was acting from a vessel on a barge. And it seemed to me the limiting question, and we're now focusing on Perini and Nasarema and the 1972 amendments, is that the traditional water nexus requirement to be working on the water was extended seamlessly to piers, wharfs, and other contiguous land-based items that were used for loading and unloading or building or destroying ships. In other words, Congress specified exactly what the land appendages had to be. And I can't figure out why a railroad bridge is used for loading and unloading a ship. And it seemed to me that I couldn't find a case that would go that far. And if it's not where Congress created the land, then he's on land and he's got an FELA case, right? Well, Judge, I think that's what I would like to convey to the court this morning. I don't know that Judge Jackson's ruling, in his opinion, articulated all of the different factual elements that one could consider in determining the situs issue. What the judge did conclude... It's legal. It's in the statute. It is in the statute. Yeah. The judge concluded, however, that the work that this man was doing on this bridge was an aid to navigation and that it was vital to transportation and ultimately any unloading or loading that's going to take place on the eastern southern branch of the Elizabeth River. This is not the typical bridge that we see in the cases that plaintiff has cited. These are not... It doesn't matter. This is not an auto bridge. The facility of navigation is not a standard that Congress recognized. Congress said it had to be an appendage or wharf that was used for loading and unloading. And the Nassarima case points out what the situation was before and it basically said it would not cover injuries on a pier even though the pier, like a bridge, extends over navigable waters. This was the status before the 72 amendments. I agree with that. And then the 72 amendments extended it to contiguous wharfs, piers. We've held it had to be contiguous and seamless and used for loading or unloading. The only other exception is building or destroying, dismantling the ship. I think the court's referring to the Sidwell decision that laid out explicitly... We have a bunch of them. My only point is before the amendments, being on a bridge over navigable waters was not a situs. I agree. All right. Even being on a drilling rig in navigable waters is not a situs. And so you have to look in order to get benefit.  It was added to. And so you have to look to the language of the 72 Act and give me some language that says a bridge over navigable waters is a situs. Well, Judge, as this court did point out in Sidwell, in order to be covered under the situs portion of the Longshore Statute, which I believe is 9044, there has to be a structure, a discrete structure, that is contiguous with and abuts navigable water. It is our position that this bridge... That's just one requirement. Take the next step. And is customarily used by an employer and employer in loading and unloading cargo.  I agree with that. The distinction here... Well, you have to. The distinction here, Judge, is a long line of cases, many of which plaintiffs cited for the proposition that people working on bridges are not covered by Longshore, that found very important the fact that the bridge had no maritime purpose. And the Kell case, for instance... Yeah, but we're not looking at maritime employment. We're looking at situs. And the cases that address situs, which were bridge cases from before 1972, were all involving longshoremen on barges, working on barges, welding and so forth, installing piers in the water and so forth. But the nature of the work was on water work. Working on a barge is longshore work. I agree, Judge. But when you've got a discrete structure such as a maritime bridge, a bridge that is... Every bridge is a maritime bridge over navigable waters. Well, this bridge has a special purpose, Judge. It's controlled by the U.S. Coast Guard. It was authorized by Congress. That has zero relevance to the statute of loading and unloading. Well, we disagree. Because if that bridge does not function properly, that entire branch of the Elizabeth River is shut down. So you're saying every bridge, then? Not every bridge, because... Collapses. A bridge collapses because it's not maintained. Water can't be used until the bridge is fixed.  Would be considered doing longshore work on a maritime situs. So is it your position that every bridge that goes over water that would collapse and thereby maybe interfere with, I guess, shipments to terminals are situses under this act? No, it's not. And the law certainly would not support that. What limitations are there on bridges that you say are covered under this act that go over water? Do they have to have a lift? What's the rule you're saying applies? I believe that this lift bridge, which I was saying, is open 23 hours and 40 minutes a day by Coast Guard regulation. It's got 10 minutes of train traffic over in the morning and back in the afternoon. The rest of the time it's open. It's absolutely vital. It was constructed to be an aid to navigation as informed us by the Secretary of the Navy back in the 1940s when they widened that channel. How about a lighthouse? A man working on a lighthouse is aiding navigation. He's trying to keep the lighthouse under repair so navigation is not impaired by running into rocks or other obstacles. But that is not a lighthouse. It's not a situs. If it's considered to be an aid to navigation and if it's regulated in such a manner? That isn't statutory language. On the tax, under the tax for the situs, the rule you're saying is not in the tax. Would you agree with that? I would agree that there's no rule that says a lift bridge is an exception to the general rule. How about a lighthouse? Is a lighthouse an exception? You just said it is. I think it would depend where the lighthouse was and what it was doing. It's on the shore warning ships not to come in the area with rocks. And we have operational lighthouses. I think that would be a stretch compared to a lift bridge. It's aiding navigation just as much. But there are other elements to consider. As a matter of fact, it's a more direct navigation aid. Are you saying then that all lift bridges over water aid navigation? I think to some extent they do. But aiding navigation isn't the end of the analysis. Well, aiding navigation is not the end of the analysis. It is critical in this case. Judge Jackson in the district court level found this to be the case. He was the administrative law judge back in the mid-90s who looked at almost an identical case. The Norfolk Circuit Court interpreting Lommel made the same conclusion. The Mitchell case? Yes. The Mitchell case was the ALJ case reported in the BRB reporter. Judge Martin's case was the Norfolk Circuit Court case. All interpreting Lommel to state that when you have a bridge that is an aid to navigation, and you're working on that bridge. He was addressing maritime status. That's correct. We're talking about situs. Talking about geography. Yeah, geography, which is an independent requirement and is very discreetly laid out. The Supreme Court has laid it out and explained it, that you look at the situs before 1972 and look at the cases, and then you add to it, not diminish, you add to it the situs created by the 72 amendment. That's what situs is. I agree. I don't think that forecloses the analysis of the adjoining property inclusion in the 1972 statutes. As this court in Sidwell said, if it's contiguous and touches a pond or over navigable water, and it's customarily used to load and unload, then there is the situs requirement met. Judge, there are several photographs in the joint appendix. I saw them, yeah. I think that if you look at 81. Don't dispute that the bridge is designed to assist navigation, so is the lighthouse. But that doesn't advance the ball very well. It's a bridge that if it's not functioning properly, there can be no loading or unloading. And if the lighthouse doesn't function properly, the ships are going to go aground. I mean, it's a... All right. Well, Judge, that's the gist of our argument. And we do believe that we've met situs based on Lommel and based on the other cases. You agree that Nacerima, which is a Supreme Court decision, has indicated that before the 72 amendments that bridges were not situses? I would agree. However, not all bridges are alike, and that's our point in this case. This is a special bridge. This is not the bridge at issue in Nacerima or the other cases that supposedly have set this cast in stone rule. This is a very unique bridge that makes navigation, loading and unloading, possible on the Elizabeth River. Thank you. Mr. Cleveland. May it please the court, I think, we still have not heard what employer it is who customarily uses this bridge in loading and unloading vessels. Norfolk Southern does not, nor do the owners of the other maritime premises up the river. It may be essential to the work of those other maritime businesses up the river, but they do not use the bridge customarily or otherwise in their loading and unloading functions. If the court has no further questions. Thank you.
judges: Paul V. Niemeyer, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.